Good morning and welcome to the Ninth Circuit. We've already submitted one case, Aguilar-Perez v. Garland. The first case we'll hear argument today is Martinez, Torres-Martinez v. Garland. I think Mr. Siddell, I guess you're appearing, actually both of you guys are appearing by video. Hopefully you can hear us. Yes sir. Whenever you're ready. This is not an easy case for an appellant to argue. The reason it's not an easy case is that the immigration judge made a finding of no credibility on the part of the the appellant and I recognize that the court should give great deference to the trial judge's finding and would only overturn it in exceptional circumstances. I'll leave that to the court to determine whether that there are any exceptional circumstances. The most interesting part of this appeal, in my opinion, is social group particularity discussions. You know you've passed right over credibility. If the adverse credibility finding is sustained, the game is over. So I would appreciate some discussion of adverse credibility. It seems to me that there's at least an argument that the IJ did not sufficiently support his finding of adverse credibility. But unless we get past the adverse credibility question, the case is over. I agree. So could you please speak to the adverse credibility? Having to do with credibility, it's my opinion that refugees frequently are not able to bring documents to support their position. The document that he brought was a doctor's report relating to an automobile accident and the applicant or appellant maintained that the doctor, out of fear for his personal safety, falsified the report. It would seem unbalanced that the appellant would have been better off producing no documents than to produce a document such as it was. But I find his representation that the doctor's report was believable. And the reason I do is because I've represented several thousand cases of political asylum over a period of 40 years. And there is a great fear of medical people to come out and say anything that they think may offend the cartel. So I think that's about what I have to say about credibility issues. The other thing is that having to do with appellant being I believe that it's totally believable that the cartels have bribed members of law enforcement, politicians, and even the military to be complicit in their criminality. There's a plata or the plomo, which in English means you take the silver or you take the lead. And so I believe a lot of people in government authority, they choose to take the silver rather than endanger their lives. So those are things that I think go somewhat to explain the inconsistencies. Mr. Sayle, what do we do with the immigration judges finding that the blindfolding aspect doesn't make any sense in light of the fact that they told the wife who brought the ransom to take a taxi and the taxi brought her directly to where her husband was being held. And the immigration judge thought that was inconsistent with her husband's story that they went out of their way to hide their identities and where they had taken him. Well, I cannot present any direct evidence, but I can tell you that based on the numerous cases that I've handled, it's well known that many taxi drivers are complicit with criminal organizations. And they would never come forth and be witnesses to anything. If they did attempt to be witnesses, the police would pass that information on to the cartels. Can you address the issue of the nexus between the harm and any protected grounds? Because Mr. Martinez testified that he had been mistaken by the cartel as just a victim of a crime or mistaken identity and not a protected ground. Can you address that? I'll attempt to. Essentially, I believe that the Ninth Circuit takes too restrictive of a position on social groups. I would maintain that social groups should not be a closed list. If it is a closed list, then it would seem to violate due process that nowhere can I find a list that's exclusive. There will always be different countries and different changing circumstances. Recently, I read an article about Iraq to where a person was a crossdresser with a media visibility of 350,000 people. The person was murdered, and the police apparently show no interest in solving the murder, largely because they're in process of making a law saying that homosexuality and even death. That's not something that I think if I was representing a person from Iraq, I could say, oh, this is a readily identifiable group of crossdressers and have much success. Here, I think that if we are forced to put this into a particular group, the closest we could say is he is a person who opposes the cartels. Mexico is noted for being what's known as a narco crossie. In other words, a government controlled by narcotics. The fact that he's opposed to the cartel puts him in a precarious situation to law enforcement. That's why he didn't go to law enforcement. He believes law enforcement is corrupt and has no interest in protecting him. Quite the contrary. They would pass his information back to the cartel, and the cartel could very easily take action against him to harm or kill him. Mr. Seidel, you have less than two minutes. You want to reserve your time for rebuttal? No, I'll let it go with what I've said. Mr. Durant. Good morning. May it please the court, Ted Durant for the government. Good morning, Mr. Seidel. There's three separate dispositive reasons why the court could uphold the judge's asylum and withholding findings. Petitioner has not demonstrated that a contrary result is compelled. That's the operative word. It's got to be compelled. Not a close call, but compelled. The first one is the adverse credibility of determination. The next one is a finding that he hasn't articulated any particular social group that's articulable. Finally, there's no nexus between the harm he fears or alleged and a protected ground under the INA. Respecting his credibility, Petitioner indicated that he was beat up by gang members because they thought he was a drug dealer. That's the reason. They took him from his house. They blindfolded him. They beat him, and then he was forced to pay ransom. As evidence of this, he got a doctor's report. In that doctor's report, not only does the doctor give a diagnosis that's incorrect or a cause that's incorrect, and it could just as well be an auto accident as it could well be obedient. All we know is that he has trauma, and that's all that it says. If it's a close call, he loses. In addition, there's dates that are inconsistent on the document, and Petitioner even gave the wrong name of the hospital. Taking that, it's just not a... Let me address the date question because we have it on a single page in our excerpts of record. There's something that happened on the 1st of April, and then there's something that happens later. The Petitioner testifies that the treatment at the hospital was on the 1st, but I noticed that he was answering a leading question. That is to say, counsel said, did this happen on April 1st? He said, yes. I think it might have been a mistake of counsel. I don't know, Your Honor. It looks like he went to the hospital the very day that he was released from his alleged captivity. Again, it could go either way. He never said he went back and tried to get another document from the court. It's just one more inconsistency there that makes the story less and less credible. It's consistent if you believe him. That is to say, he went to the hospital and the doctor was afraid to put down that he'd been beat up by the cartel and instead put down automobile accident. Now, you can decide you don't believe him, but he's got a story that is at least plausible as to why the cause of the injuries is not accurately recorded. It's possible, Your Honor, but it doesn't compel a contrary result. That's the thing. If it's a Supreme Court case, I think it's Anderson v. Bessemer City. I always say, maybe this, maybe that, then Petitioner loses. It's his burden and it's got to be compelled. I've been doing this for a long time. One of the things you look at if you're trying to figure out is this a bona fide claim is the behavior of the person coming to the United States. He presents himself at the border and he tells essentially this story. He does not sneak across and then the story when he's caught. Your Honor, I'm sure there's countless non-citizens who come across who tell the story that it's not true. In addition, he's a painter's assistant. I've been down on the border with the Marine Corps. There's no tats on him. Then they come out of nowhere and say you're a drug dealer. They hold him for six days and they don't kill him. The fact is that the implausibility aspect of that credibility story. In his asylum application, he says they've got ski masks on. Then in his testimony, they've covered his face with a shirt and then they give his wife directions on how to take a cab there. Why would these people care? Especially if, as Petitioner says, they're so powerful. They're practically dining with the police. Even Petitioner said that even if the police found out, they'd lead him to the gang. That's another aspect of his story that's completely implausible based on common sense and how things go down south of the border. It's a brutal area. In addition, if the court is not satisfied with the adverse credibility finding and government says it's quite strong, then Petitioner still has to get by the PSG finding. His two articulated particular social groups lack particularity and social distinction. There's nothing in the record that says that young Mexican males or Mexican males perceived as cartel members are either particular or socially distinct in Mexican society. Finally, there's absolutely no nexus. Petitioner testified again and again and again. They went after him because they thought they were encroaching on his territory. It has nothing to do with a protected ground. It's pure thuggery on the part of these people. Speaking only for myself, I'm inclined to agree with you with respect to asylum and withholding that he's got problems with social group and he's got problems with nexus. That's not a ground on which to deny Catt. Assuming for the moment that we treat his testimony as credible, is there a Catt claim or should we remand to determine whether there's a Catt claim? Well, the agency gave two reasons for denial of Catt. Number one, it's incredible and they rest on the same ground. So you can... I'm sorry, that's right. He said it's incredible. Correct. Yep. Correct. And then, of course, there is a Catt claim. The immigration judge found that Petitioner hasn't shown a likelihood of future torture, that he hasn't shown that this cartel is connected to the government or that the government would consent in his torture. And you have Petitioner and Catt is looking forward. It's the likelihood of future torture. And you have someone who, after his initial incident with a gang, he remained in Mexico for close to four months. If I look at the dates when he left, no one bothered him. Perhaps he saw people outside his house, but he didn't know him. That's not, you know, torture or anything close to it. Since his departure, he has no idea if the gang is after him. In fact, none of his that the Mexican president is really trying to take on gang violence. So if you look at that, all of that, there is no likelihood of future torture. And so I would say that Petitioner loses all around on every aspect. So that's the case there. It's an unfortunate case that the Petitioner went through something in Mexico, perhaps a car crash, but his claims for asylum, withholding, and Catt ultimately fail based on the fact that he cannot compel or show the alternative result is compelled. And if there's no further questions, I will stop. But if the court has any more questions, I'm happy to answer them. Great. Thank you. Thank you, Your Honor. Thank you, Mr. Siddell. Thank you. Are we finished? Mr. Siddell, I guess you're going to waive your remaining time. What's that? I didn't quite hear. Are you waiving your rebuttal time, Mr. Siddell? Yes, I am. Okay, great. Thank you both. The case has been submitted.
judges: FLETCHER, TALLMAN, LEE